UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

**WILLIAM J. MARTINI**
      **JUDGE**

# LETTER OPINION

July 19, 2012

Abraham S. Alter
Langton & Alter
P.O. Box 1798
1600 St. Georges Avenue
Rahway, NJ 07065
    *(Attorney for Plaintiff)*

Katrina Lederer
Special Assistant United States Attorney
c/o Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
    *(Attorney for Commissioner of Social Security)*

    RE:   *Moore v. Comm'r of Soc. Sec.*
              <u>Civil Action No. 11-3611</u>

Dear Counsel:

    Petitioner Sandra Moore brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). There was no oral argument. *See* Fed. R. Civ. P. 78. For the following reasons, the Commissioner's decision is **AFFIRMED**.

**I.**    **Standard of Review and the Social Security Legal Framework**

    This Court has plenary review of the Administrative Law Judge's ("ALJ") application of the law. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d

1

429, 431 (3d Cir. 1999). When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing 42 U.S.C. § 405(g)).

At the administrative level, a five-step process is used to determine whether an applicant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. At Step One, the ALJ determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, the ALJ moves to Step Two to determine if the claimant's alleged impairments qualify as "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment or impairments, the ALJ inquires at Step Three as to whether the impairment or impairments meet or equal the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits and the analysis ends; if not, the ALJ moves on to Step Four. 20 C.F.R. §§ 404.1520(d), 416.920(d). At Step Four, the ALJ decides whether, despite any severe impairment(s), the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At Step Five, the burden shifts to the Commissioner to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec. Admin.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

## II.   Factual and Procedural Background

Ms. Moore applied for a period of disability and DIB on February 4, 2003, and again on December 19, 2005. Ms. Moore claims that she is entitled to DIB for the period between April 9, 2002, and December 11, 2007, because of exogenous obesity, arthritis in the right knee, asthma, depression, and podiatric impairment including corns, neuromas, bursitis and tendonitis of both feet. She also has a history of hypertension due in part to past cocaine use. The Social Security Administration denied Ms. Moore's first application on July 14, 2003, and again upon reconsideration on November 26, 2003. Her first ALJ hearing occurred on October 13, 2005, and resulted in a determination that she was not disabled. The Appeals Council remanded the case and instructed the ALJ to combine the 2003 application with the additional 2005 application into one claim.

On January 8, 2008, an ALJ hearing occurred on the combined claim, resulting in the determination that Ms. Moore was not disabled. Ms. Moore appealed that decision, and the Appeals Council remanded the case so that medical

expert Dr. Martin Fechner could explain his previous testimony that Ms. Moore may have been disabled prior to surgery. On April 1, 2009, a second ALJ hearing occurred, and on July 2, 2009, the ALJ decision again found that Ms. Moore was not disabled. The ALJ recognized that Ms. Moore had certain impairments, but also found that Ms. Moore had the RFC to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), with certain environmental limitations. The Appeals Council denied Ms. Moore's request for review, and she filed this action.

Ms. Moore claims that the ALJ's findings regarding her RFC are not supported by substantial evidence for several reasons discussed below.

### III. Legal Analysis

#### A. The ALJ Adequately Reviewed the Record Evidence.

In addition to certain specific issues she raises that are discussed in detail below, Ms. Moore implies that the ALJ's RFC findings are insufficiently supported and based on an incomplete review of the medical evidence. Ms. Moore mischaracterizes the ALJ's decision as relying chiefly on the testimony of Dr. Fechner, a medical expert who completed interrogatories, to the exclusion of other medical evidence. This argument fails because the ALJ's decision as it pertains to Ms. Moore's RFC is thorough, exhaustive, and appropriately explains the information that he accepts and rejects.

The ALJ has the power to determine which medical opinions he accepts and rejects, and the weight to give each opinion. 20 C.F.R. § 404.1527(e). Further, the ALJ is allowed to give great weight to a medical expert's opinion if the assessment is well supported by the medical evidence of record. *Sassone v. Comm'r of Soc. Sec.*, 165 F. App'x 954, 961 (3d Cir. 2006) (upholding ALJ's determination that claimant had RFC to perform light work even though it was based largely on assessment of one medical expert). But the ALJ must explain why he discounts or rejects certain evidence. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009) (remanding case because ALJ did not adequately set forth reasons for determining claimants RFC); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (illustrating that ALJ considered and discussed appropriate factors in reaching his conclusion); *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999) (finding that ALJ's decision and explanation in regards to claimant's physical limitations is supported by substantial evidence). The ALJ's explanation must be sufficient enough to permit the court to conduct a meaningful review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (ruling that the ALJ's conclusory statements were inadequate for the court to conduct a proper review).

The ALJ reviewed Ms. Moore's extensive medical record in detail and

determined that "there is no reason why she would be unable to perform sedentary work." (Tr. 23-25). Throughout the decision, the ALJ indicated the evidence he accepted and the evidence he rejected; he also provided reasons for discounting evidence. *See Diaz*, 577 F.3d at 505-06; *Burnett*, 220 F.3d at 121. The ALJ asked Dr. Fechner, a non-treating medical expert, to complete interrogatories and determine Ms. Moore's RFC in combination with her obesity. The ALJ gave great weight to Dr. Fechner's assessment, stating that it "was well reasoned and it considered her obesity with her other physical impairments." (Tr. 25). The ALJ also discussed the findings of Dr. Krisa, a treating physician who met with the complainant many times between 2002 and 2007 regarding pneumonia, ear infections, cocaine abuse, podiatric surgery, and an RFC assessment. (Tr. 513, 688-709). However, the ALJ gave limited weight to Dr. Krisa's 2007 finding that Ms. Moore was able to walk for six hours in a day, because it "was not consistent with objective evidence" and "does not appear to take into account the claimant's right knee arthritis and bilateral foot podiatric conditions." (Tr. 24). Additionally, the ALJ gave no weight to Dr. Krisa's final opinion that Ms. Moore was a good candidate for disability, because the physician did not provide an assessment to buttress his opinion. (Tr. 25). Further, no weight was given to the opinion of Dr. Enrico, who treated Ms. Moore for foot and ankle pain in 2004 and performed arthroscopic surgery on the plaintiff's right ankle in 2005. (Tr. 488-89, 509). Dr. Enrico stated that Ms. Moore was a good candidate for disability, but failed to support this opinion with a functional assessment. (Tr. 25). Finally, the ALJ gave no weight to the 2006 assessment of Dr. Miskin, a consultative psychiatric examiner who evaluated Ms. Moore on two occasions. In 2006, Dr. Miskin opined that Ms. Moore had "limited to poor ability to respond appropriately to supervision[.]" (Tr. 24). However, the ALJ found that this was contradictory to Dr. Miskin's evaluation "that the claimant was cooperative, coherent, and compliant." (Tr. 24). In 2009, Dr. Miskin again evaluated Ms. Moore, this time finding that she "had no limitations in her ability to interact appropriately with supervisors, coworkers, and the public[.]" (Tr. 24). The ALJ determined that this most recent opinion was much more consistent with the other medical evidence. (Tr. 24).

In this case, the ALJ has committed no error; he has reviewed the medical evidence and sufficiently explained his reasons for attributing greater weight to the opinion of Dr. Fechner.

> B.   The ALJ Properly Considered Ms. Moore's Obesity, in Combination with Her Other Impairments, to Determine that She Was Not Disabled Pursuant to SSR 02-1p.

Ms. Moore argues that the ALJ did not act pursuant to SSR 02-1p because

the ALJ did not properly consider her obesity in combination with her other impairments. This argument fails.

The purpose of SSR 02-1p is to provide guidance on the evaluation of obesity in disability claims filed under Titles II and XVI of the Social Security Act. SSR 02-1p, 2002 WL 34686281, at *1 (Sept. 12, 2002). The regulation replaced an automatic designation of obesity as a Listed Impairment, based on a claimant's height and weight, with an individualized inquiry, focused on the combined effect of obesity and other severe impairments afflicting the claimant. *Diaz*, 577 F.3d at 503 (remanding the case because ALJ did not meaningfully consider effects of the claimant's obesity in combination with her other impairments). The regulation instructs ALJs to consider the combined effects of obesity with other impairments at every step of the sequential evaluation process, because the combined effects may be greater than the effects of each impairment considered separately. *Id.*; *Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir. 2005); SSR 02-1p, 2002 WL 34686281, at *1. The ALJ may rely heavily on the opinion of a medical expert, if supported by medical evidence, to determine the effect that obesity has on the claimant's alleged disability. *See Sassone*, 165 F. App'x at 961 (giving great weight to assessment of medical expert because it was well supported by the medical evidence of record).

The ALJ, in this case, properly considered obesity under the standards of SSR 02-1p and ruled that Ms. Moore's obesity, in combination with her other ailments, did not meet or equal a listed impairment. (Tr. 21). The ALJ's determination relied heavily upon Dr. Fechner's interrogatories, stating that "Dr. Fechner carefully reviewed the entire record and evaluated the claimant's physical impairments including obesity." (Tr. 25). Dr. Fechner considered Ms. Moore's obesity and determined that she had the ability to carry up to ten pounds and sit for six hours in an eight hour work day. (Tr. 25). After reviewing Dr. Fechner's assessment, the ALJ stated that "the claimant's physical impairments including obesity were considered and it is reasonable to preclude the claimant from prolonged walking and standing . . . but there is no reason why she would be unable to perform sedentary work." (Tr. 25).

C. The ALJ Did Not Err in Failing to Allow Ms. Moore's Obesity to Act As a Substitute for Certain Criteria of Ineffective Ambulation.

Ms. Moore argues that the ALJ erred by failing to allow her obesity to substitute for certain criteria of ineffective ambulation, as defined in 20 C.F.R. pt. 404, subpt. P, App'x 1, § 1.00(B)(2)(b). Specifically, Ms. Moore, who only uses one cane, argues that her obesity should be used as a substitute for the criteria which lists the use of two canes as ineffective ambulation. This argument fails.

5

The relevant C.F.R. defines the inability to ambulate effectively as an extreme limitation of the ability to walk. *See Andrews v. Astrue*, No.10-04932, 2011 WL 6756967, at *4 (D.N.J. 2011) (affirming ALJ's decision that claimant was not affected by the same degree of difficulty in ambulating as section defined). In order to ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to carry out the normal activities of daily living. 20 C.F.R. pt. 404, subpt. P, App'x 1, § 1.00(B)(2)(b)(2). The C.F.R. also includes a non-exhaustive list of examples that qualify for ineffective ambulation, including the need to use two canes to ambulate. *Id.* § 1.00(B)(2)(b)(2). Contrary to Ms. Moore's assertion, the purpose of SSR 02-1p was not to have obesity used as a substitute for certain criteria; instead, obesity should be considered in combination with the claimant's other impairments to determine if the claimant is unable to ambulate effectively. *Andrews*, 2011 WL 6756967, at *4; *Johnson v. Comm'r of Soc. Sec.*, No. 10-05862, 2011 WL 5082214, at *8 (D.N.J. 2011) (concluding that ALJ had explicitly considered claimant's obesity under guidelines of SSR 02-1p and determined that claimant had not lost her ability to ambulate).

The ALJ was not required to substitute Ms. Moore's obesity for the ineffective ambulation criteria requiring two canes. Instead, the ALJ appropriately followed the guidelines of SSR 02-1p and relied on Dr. Fechner's interrogatories, as stated in part B of this opinion, which took Ms. Moore's obesity into consideration. The interrogatories established that Ms. Moore needed to use a cane, but that she was able to ambulate effectively and was able to walk or stand for up to two hours in an eight hour work day. (Tr. 1059).

D.   The ALJ Properly Resolved Dr. Fechner's Conflicting Testimony Regarding Ms. Moore's Disability Prior to Her Weight Loss Surgery.

During the ALJ hearing in 2008, medical expert Dr. Fechner was asked if he believed that Ms. Moore could have been disabled prior to her weight loss surgery. (Tr. 941). Dr. Fechner responded "that could certainly be true" and then elaborated, stating "there seems to me to be a good likelihood that before she lost weight she could very well have been disabled." (Tr. 941). The ALJ determined that Ms. Moore was not disabled; however, the Appeals Council remanded the decision because the ALJ did not adequately address Dr. Fechner's testimony regarding the possibility of disability prior to surgery. (Tr. 941). On remand, the ALJ instructed Dr. Fechner to complete interrogatories regarding the claimant's obesity. (Tr. 25). Dr. Fechner completed the interrogatories on June 3, 2009, and concluded that Ms. Moore had not been disabled since the alleged onset date of April 9, 2002. (Tr. 1058). Ms. Moore now argues that the ALJ did not properly

6

address Dr. Fechner's 2008 testimony and that the 2009 interrogatories are not sufficient to retract his previous statements. Ms. Moore believes that Dr. Fechner's original statement, hypothesizing that she could have been disabled prior to her weight loss surgery, equates to evidence entitling her to disability benefits for the five year period of 2002-2007. This argument fails.

The ALJ does not have to make explicit credibility findings as to each bit of conflicting testimony so long as his factual findings as a whole shows that he implicitly resolved such conflicts. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (determining that ALJ can consider all evidence without directly addressing every piece of it in his written decision); *See also Malloy v. Comm'r of Soc. Sec.*, 2008 WL 2168002, at *7 (D.N.J. 2008). Further, certain opinions are reserved to the Commissioner, and not to medical experts, including opinions that the claimant is disabled. 20 C.F.R. § 404.1527(d)(1). A statement by a medical source that a claimant is disabled does not mean that the ALJ will consider the claimant to be disabled. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (stating that ALJ, not treating or examining physicians or consultants, must make ultimate disability and RFC determinations); *Brown v. Astrue,* 649 F.3d 193, 196-97 (3d Cir. 2011) (explaining that the ALJ is not bound to accept opinion or theory of any medical expert); 20 C.F.R. § 404.1527(d)(1).

Even though a medical expert's opinion regarding disability is not controlling, as discussed above, the ALJ properly resolved the conflict of Dr. Fechner's testimony. The Appeals Council, in ordering a remand, stated "that the ALJ must evaluate the non-examining opinion of Dr. Fechner in light of the comment that Ms. Moore may have been disabled prior to surgery." (Tr. 942). In order to resolve this issue, the ALJ required Dr. Fechner to carefully review the entire record and evaluate Ms. Moore's physical impairments, including obesity. (Tr. 25, 1058). Dr. Fechner determined that the claimant, since her alleged onset date of April 9, 2002, was capable of lifting and carrying up to ten pounds; sitting up to six hours in an eight hour work day; standing and walking up to two hours in a work day; and the occasional climbing of stairs and ramps. (Tr. 25, 1058). The ALJ properly relied on Dr. Fechner's interrogatories to determine that Ms. Moore could effectively ambulate during the claimed time period of disability. (Tr. 25).

### IV. Conclusion and Recommendation

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

7